UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Valerie Brooks, | No. 2:20-cv-01219-KJM-DB |
| Plaintiff, | ORDER |
| v. | |
| Morphe LLC, et al., | |
| Defendants. | |

Valerie Brooks, who is legally blind, brought this action on behalf of a proposed class of visually impaired internet users. She alleges Morphe LLC operates a website that is not accessible to the visually impaired, and she moves now to certify the proposed class. Because she has not shown the class is "so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1), and that class counsel will "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), the motion is **denied without prejudice to renewal**, as explained in this order.

I.  **BACKGROUND**

According to Brooks's complaint, Morphe operates morphe.com, a website for affordable makeup. Compl. ¶¶ 5, 22, ECF No. 1. She alleges morphe.com is not accessible to people who are blind or visually impaired. *Id.* ¶ 23. For example, she claims the website lacks alt-text that would permit screen reader software to describe the graphics and images on each page, *see id.*

1

¶ 26.a., and she alleges the website has empty links with no text, which prevents screen readers from communicating the link's purpose, *see id.* ¶ 26.b. Brooks asserts claims under the Americans with Disabilities Act and the California Unruh Civil Rights Act, *see id.* ¶¶ 54–67, and she seeks damages and prospective relief on behalf of a proposed class of visually impaired people who encounter the alleged barriers on morphe.com, *see id.* ¶¶ 41–53 (class allegations); *id.* at 18 (prayer for relief).

Brooks completed service on Morphe soon after she filed her complaint, ECF No. 5, but Morphe did not respond or appear, and the Clerk's Office entered default. *See* ECF No. 8. Brooks moved for default judgment. *See* Mot. Default J., ECF No. 13. The motion was referred to the assigned magistrate judge under this District's local rules, and the magistrate judge denied the motion without prejudice for several reasons. *See* Order (Feb. 16, 2021), ECF No. 20. Because Brooks sought to represent a class under Rule 23 but had not moved for class certification, a default judgment would not offer class-wide relief. *See id.* at 2. Nor had Brooks specified how many times she had visited the website, so she could not quantify her claim for damages under California law, which imposes penalties based on the number of visits. *See id.* at 2–3. In addition, although her complaint requests injunctive relief, she had not discussed that claim in her motion for default judgment, and it was unclear whether she had standing to assert a claim for prospective relief. *See id.* at 3.

Brooks now moves to certify a class action under Rule 23. *See* Mot., ECF No. 21. She proposes a nationwide class and a California class. *See id.* at 2–3. The proposed nationwide class would include "all legally blind individuals who have attempted to access Defendant's website by use of a [sic] screen reading software during the applicable limitations period up to and including final judgment in this action." *Id.* at 2. The proposed California class is defined identically, but includes only people in California. *Id.* at 2–3. Because Morphe has not appeared, the motion is unopposed. The court submitted the matter without a hearing.

**II.   CLASS CERTIFICATION**

Litigation by a class is "an exception to the usual rule" that only the "individual named parties" bring and conduct litigation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)

1  (citation and quotation marks omitted). Class certification is governed by Federal Rule of Civil
2  Procedure 23. Rule 23 imposes four prerequisites on every class. First, the class must be "so
3  numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Second,
4  questions of law or fact must be common to the class. Fed. R. Civ. P. 23(a)(2). Third, the named
5  representatives' claims or defenses must be typical of those of the class. Fed. R. Civ. P. 23(a)(3).
6  And fourth, the representatives must "fairly and adequately protect the interests of the class."
7  Fed. R. Civ. P. 23(a)(4). Plaintiffs who satisfy these four prerequisites must also show the
8  proposed class fits within one of the three categories of classes described in Rule 23(b). Brooks
9  seeks certification under two of these categories: Rules 23(b)(2) and 23(b)(3). A class can be
10 certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on
11 grounds that apply generally to the class, so that final injunctive relief or corresponding
12 declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(3) permits
13 certification of a class if common questions of law and fact predominate and a class action is the
14 superior means of litigation.

15     "The party seeking class certification bears the burden of demonstrating that the
16 requirements of Rules 23(a) and (b) are met." *United Steel, Paper & Forestry, Rubber, Mfg.*
17 *Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO C.L.C. v. ConocoPhillips Co.*, 593
18 F.3d 802, 807 (9th Cir. 2010). This burden is more than a "mere pleading standard." *Wal-Mart*,
19 564 U.S. at 350. The moving party must "prove that there are *in fact* sufficiently numerous
20 parties, common questions of law or fact, etc." *Id.* (emphasis in original). The trial court must
21 then conduct a "rigorous analysis" of whether the moving party has met its burden, *id.* (citation
22 omitted), and "analyze each of the plaintiff's claims separately," *Berger v. Home Depot USA,*
23 *Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014), *overruled on other grounds by Microsoft v. Baker*, 127
24 S. Ct. 1702 (2017) (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809
25 (2011)). The court must verify the putative class's "actual, not presumed, conformance with Rule
26 23(a)." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).
27 /////

### III. ANALYSIS

Brooks has not satisfied two of the prerequisites of Rule 23(a). First, she has not shown the classes she proposes are "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). She cites no evidence that any visually impaired person other than herself visited morphe.com. She instead relies on extrapolations from survey and census data.

Although survey and census data can prove that a proposed class satisfies the first prerequisite of Rule 23, *see, e.g.*, *Nat'l Fed'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1199–1200 (N.D. Cal. 2007), Brooks's analysis is too speculative. She relies on the same calculation for both proposed classes, detailed on page four of her brief:

1. Count the number of unique visitors to morphe.com in a given month. Divide that number by the U.S. (or California) population to find the proportion of the U.S. (or California) populations that visited morphe.com in the chosen month. Call this proportion $x$.
2. Estimate the number of blind and visually impaired Americans (or Californians) who use screen reader software when they use the internet. Call this number $y$.
3. Multiply $x$ and $y$, and call the product $z$. This product estimates the number of unique visitors to morphe.com in the chosen month who were blind or visually impaired and who used screen reader software.
4. Multiply $z$ by the number of months in the proposed class period. The result estimates the size of the proposed classes.

This calculation relies on several assumptions, some of which are questionable. For example, the multiplication of $x$ and $y$ assumes there are no meaningful differences in internet use between those who buy makeup online and those who do not; between those who visit morphe.com and those who do not; and between people of differing visual impairments. Brooks offers no statistics, expert opinion, reasoning, or data. She also assumes one month's traffic is representative of the whole class period. This assumption would overstate the class size if the chosen month is an outlier. She does not say whether the month she identifies is typical or representative.

4

Brooks's execution of this calculation is also flawed.  At the first step listed above, for example, she does not use the number of unique visitors to morphe.com, but rather to "Farmer Boys," Mot. at 4, apparently a vestige from a prior motion her counsel filed in a different case, *cf. generally Alcazar v. Farmer Boys Food, Inc.*, No. 20-04342, 2020 WL 5984366 (C.D. Cal. July 14, 2020).  At the second step, she assumes without explanation that visually impaired or blind people use the internet at the same rate as people with a "disability" of any kind.  And due to an apparent mathematical error, she inadvertently overestimates the number of blind or visually impaired Americans who use screen reading software online.  She estimates "77% of Americans with a disability go online" and "70% of blind and visually impaired Americans use screen-reading software to experience the internet."  *See* Mot. at 4.  She also estimates 1.02 million Americans were legally blind at the relevant time.  *Id.*  Assuming without deciding that Americans with a disability of any kind use the internet at the same rate as visually impaired or blind Americans, then the number of visually impaired or blind Americans who use a screen reader on the internet would be 1.02 million × 77% × 70% using Brooks's method.  She instead multiplies 1.02 million × 70%.

Many of the statistics Brooks uses are also suspect.  She claims, for example, that surveys have shown that "77% of Americans with a disability go online."  *Id.*  She does not cite these surveys except to say they were current in 2016 and were conducted by Pew Research.  *See id.*  Nor does she explain what disabilities the surveys included.  She also "estimates that 70% of blind and visually impaired Americans use screen-reading software to experience the internet," but she cites no evidence to show that assumption is reasonable or how she made it.  *See id.*

Rule 23(a)(1) does not demand precision, but it does require more than guesswork.  *See, e.g.*, *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) (denying class certification in ADA case because moving plaintiff's "census data and statistics [were] too ambiguous and speculative to establish numerosity").  When courts have granted motions to certify classes in reliance on statistics and census data like those Brooks has presented here, a party has presented the data clearly and accurately with citations to sources and explanations for its relevance and usefulness, including from those with helpful experience and expertise.  *See,*

5

*e.g.*, *Nat'l Fed. Blind*, 582 F. Supp. 2d at 1199–1200. In other cases, proposed classes remained "numerous" even after the court corrected errors and tempered unrealistic assumptions. *See, e.g.*, *Shields v. Walt Disney Parks & Resorts US, Inc.*, 279 F.R.D. 529, 544–45 (C.D. Cal. 2011). The court has no such assurances or correctives here. Brooks has not proven "that there are *in fact* sufficiently numerous parties." *Wal-Mart*, 564 U.S. at 350 (emphasis in original). She has not proven the proposed class satisfies Rule 23(a)(1).

Nor has Brooks proven "the representative parties will fairly and adequately protect the interests of the class," as required by Rule 23(a)(4). This rule requires her to show, among other things, that class counsel is competent and will vigorously advocate the interests of absent class members. *See Falcon*, 457 U.S. at 158 n.13; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

Although Brooks's counsel at the Wilshire Law Firm has represented other plaintiffs in many class actions, including in many cases of alleged ADA violations, its representation in this case to date has not been adequate. Counsel overlooked several procedural, evidentiary, and legal requirements to the detriment of the proposed class in moving for default judgment: (1) counsel moved for default judgment without first obtaining class certification; (2) counsel requested default judgment of the proposed class's state claims without specifying the amount of damages sought; and (3) counsel requested injunctive relief for the class without discussing that request and without showing this court has jurisdiction to enter an injunction. *See* Order (Feb. 16, 2021) at 3. The brief in support of Brooks's motion for class certification also contains several errors that call counsel's competence and dedication into question. For example, the motion refers to the wrong defendant, *see* Mot. at 4 ("Farmer Boys"), and it lacks crucial citations and evidence, as explained above. The papers also include several less substantive errors that call the vigor of representation into question. *See, e.g.*, *id.* at 3 ("Plaintiff submits that *he* has satisfied both Rule 23(b)(2) and Rule 23(b)(3)." (emphasis added)); *id.* at 5 (referring to "Plaintiffs").

The court does not question counsel's qualifications and past successes. Some errors are unavoidable, understandable, and forgivable. But in this case, because the defendant has not responded to Brooks's complaint—and because absent class members must rely entirely on

counsel's competence and vigorous representation to obtain and collect on a default judgment—counsel's unforced errors weigh heavily.  Courts have denied motions to certify classes in the face of similar "errors and deficiencies in representation." *Kandel v. Brother Int'l Corp.*, 264 F.R.D. 630, 634 (C.D. Cal. 2010).

### IV. CONCLUSION

Because Brooks has not proven the proposed class meets the prerequisites of Rule 23(a), the court does not consider whether the class could be certified under one of the categories in Rule 23(b).  The motion for class certification is **denied without prejudice to renewal**.  Any renewed motion must be filed **within thirty days**.

This order resolves ECF No. 21.

IT IS SO ORDERED.

DATED:  June 7, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE